UNITED STATES of America, Plaintiff,

v.

**Jose A. RIVERA RUIZ,**
**et al., Defendant.**

**Crim. No. 91–291 (JP).**

United States District Court,
D. Puerto Rico.

July 16, 1992.

Ernesto Hernández, Asst. U.S. Atty., Hato Rey, Puerto Rico, for plaintiff.

Juan R. Acevedo Cruz, Hato Rey, Puerto Rico, for defendant.

## OPINION AND ORDER

PIERAS, District Judge.

The Court has before it defendant José Rivera Ruiz's Motion to Suppress a confession. The Magistrate held a Suppression Hearing and submitted a Report and Recommendation which recommended that the Motion to Suppress be denied. Upon a thorough review of the record, the Court concludes that the Report and Recommendation should not be adopted, and that the Motion to Suppress should be granted.

The defendant asserts that his oral and written confessions should be suppressed, because his confession was submitted under threats by Special Agent Marte, and because the government officials delayed in bringing him before a U.S. Magistrate for an initial appearance. The government's response to the aforementioned objections to the Report and Recommenda-

tion, merely reiterates the Magistrate's findings.

## FEDERAL RULE OF CRIMINAL PROCEDURE 5(a)

■ The defendant initially objects to the Magistrate's Report and Recommendation, because he asserts that the confession must be suppressed as a violation of Federal Rule of Criminal Procedure 5(a). Federal Rule of Criminal Procedure 5(a) provides that a defendant must be brought before a federal magistrate without "unnecessary delay." A confession obtained during a period of unreasonable delay is not admissible over the defendant's objection. *Mallory v. U.S.*, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957). The critical time period is the time between the arrest and the statement, because Title 18 U.S.C. § 3501(c) bars the admission of confessions taken *after* six hours of initial detention, when the defendant has been unreasonably kept from appearing before a U.S. Magistrate. The confession in this case was taken long after the defendant was initially detained. The defendant was detained in his fishing boat at midnight (Tr. 52), and the confession was not obtained until 10:00 a.m. the next day, ten hours later. Tr. 51.

■ Yet, Title 18 U.S.C. § 3501(c) provides that the six-hour "time limitation contained in this subsection shall not apply in any case in which the delay in bringing such person before such magistrate or other officer beyond such six-hour period is found by the trial judge to be reasonable considering the means of transportation and the distance to be traveled to the nearest available magistrate or other officer." In the instant case, the delay in bringing the defendant before a magistrate, was reasonable because: 1) he was detained in the middle of the night, when no magistrate is available to preside over an initial appearance hearing; 2) the investigatory process of searching the boat, searching the defendants, searching the area for contraband, and transporting the vessel was lengthy; and 3) the defendant was detained at sea where the distance to the U.S. Customs Office in Fajardo was far and the

officers needed to refuel their vessel. *Mallory v. U.S.*, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957) (delay for ordinary administrative steps is not unnecessary); *U.S. v. O'Looney*, 544 F.2d 385 (9th Cir.) (necessary delay can be caused by remoteness of arrest location and investigatory reasons) *cert. denied*, 429 U.S. 1023, 97 S.Ct. 642, 50 L.Ed.2d 625 (1976); *cf. U.S. v. Hall*, 348 F.2d 837 (2d Cir.) (recovery of contraband necessary delay) *cert. denied*, 382 U.S. 947, 86 S.Ct. 408, 15 L.Ed.2d 355 (1965). Therefore, the confession should not be suppressed as a violation of Federal Rule of Criminal Procedure 5(a). The defendant's alternative basis of support holds more merit for the following reasons.

## KNOWING AND VOLUNTARY CONFESSIONS

■ Title 18 U.S.C. § 3501(a) requires that confessions admitted into evidence be "knowingly and voluntarily" made. The government has the burden of proof of demonstrating that the confession was knowingly and voluntarily made, by a preponderance of the evidence. *Lego v. Twomey*, 404 U.S. 477, 482–84, 92 S.Ct. 619, 623–24, 30 L.Ed.2d 618 (1972). The voluntariness of an admission depends on "whether the will of the defendant [was] overborne so that the statement was not his free and voluntary act, and that question [is] to be resolved in light of the totality of the circumstances." *Bryant v. Vose*, 785 F.2d 364, 367–68 (1st Cir.), *cert. denied*, 477 U.S. 907, 106 S.Ct. 3281, 91 L.Ed.2d 570 (1986).

In the instant case, the defendant's fishing boat was detained after midnight, on August 26, 1991, and he was eventually brought in for questioning by Special Agent Marte. While confined in a room with only Special Agent Marte, the defendant was threatened. Tr. 81–83 & 89. The substance of the threats was to the effect that if the defendant did not cooperate, his wife of ten years and their children (ages three and nine) would be endangered. This testimony was not contradicted by the

government.[1] As confirmation of the threat, after being questioned by Special Agent Marte, the defendant briefly saw his wife in the hallway in tears. In addition, Ms. Neida Garcia, the defendant's wife, later informed the defendant that Special Agent Marte had also repeated the threat to her—"That if he didn't cooperate I could get mixed up in the trouble and my children likewise."[2] Tr. 58–59, 88.

Therefore, it was not until the defendant and his wife were threatened that the defendant consented to cooperate with a written confession. It was at that time that Special Agent Marte informed Special Agent Juan Dania that the defendant wanted to cooperate, and that his assistance would be required in taking down the confession. It was then that Special Agent Dania administered the Miranda warnings to the defendant. Tr. 37. After the confession was already completed, the defendant signed the Miranda Warning Waiver. Tr. 41.[3]

Even though the Magistrate found Special Agent Juan Dania's sworn testimony to be credible, that testimony in no way contradicts that of the defendant's. Special Agent Dania was not in the room when the defendant told Special Agent Marte that he would cooperate. Tr. 44. Therefore, his testimony has little relevance to the voluntariness of the admission, which is at issue in the Motion to Suppress. The only other testimony which the government brought forth at the Suppression Hearing, was that of Customs Officer Miguel Torres, the sensor operator aboard the U.S. Customs aircraft which detected an unidentified aircraft and the defendant's fishing boat, along with another vessel on the evening in question. Officer Miguel Torres's testimony also had nothing to elucidate concerning the arrest of the defendant and the voluntariness of his confession. With the defendant's testimony and Ms. García's testimony unrebutted, we cannot say that the government has satisfactorily carried its burden to prove by a preponderance of the evidence, that the confession was knowingly and voluntarily given. A confession which is seemingly coerced by psychological pressure should be held to be involuntary. *Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). The record shows that the defendant was especially susceptible to the psychological pressure described by the First Circuit as key to the voluntariness analysis, in *U.S. v. Jackson*, 918 F.2d 236, 242 (1st Cir.1990), because the threats related to close family members such as his two young children and his wife of ten years; and because he had no prior experience with the criminal justice system.[4] Wherefore, in view of the foregoing, the defendant's Motion to Suppress is hereby GRANTED.

IT IS SO ORDERED.

---

1. In fact, Special Agent Marte was present at the Suppression Hearing, but never testified. *See* Magistrate Report and Recommendation at 3.

2. Defendant's wife also testified that Special Agent Marte called her home on September 3, 1991, a number of days after the arrest and told her she should go see him at his office. He also instructed her not to speak of this request with her husband, family or lawyer, because it was a personal matter. Tr. 59. Ms. Neida García did not comply with Special Agent Marte's request. Four days later Special Agent Marte again called her home and questioned her as to why her husband had another lawyer, and whom was paying for the lawyer. At that time he also reiterated that she should persuade her husband to cooperate. Tr. 60. All the forgoing testimony was left unchallenged by the government.

3. Special Agent Dania also testified that Special Agent Marte had informed him that he had also read the defendant his Miranda warnings at some unspecified time prior to Dania's intervention. Tr. 43. Special Agent Marte never testified himself about when he allegedly administered the Miranda warning. In contrast, the defendant asserts that he was never administered a Miranda warning until Special Agent Dania intervened. Tr. 85.

4. The defendant's testimony that he had never been arrested before was uncontroverted by the government. Tr. 83. Indeed, there was further evidence by a Vieques "público" bus driver that the defendant was well known in the community as a fisherman for the past twenty-three years. Tr. 66 & 73.