UNITED STATES of America, Plaintiff,

v.

Emmett Wesley DUNCAN and
Michael Gray, Defendant.

No. 93–CR–0136–S.

United States District Court,
D. Utah,
Central Division.

July 1, 1994.

Richard N.W. Lambert, Asst. U.S. Atty., U.S. Attorney's Office, Salt Lake City, UT, for plaintiff.

Deirdre A. Gorman, Farr, Kaufman, Sullivan, Gorman, Jensen, Perkins & Medsker, Ogden, UT, for defendant.

## ORDER

SAM, District Judge.

The court has before it the Report and Recommendation of the magistrate judge dated May 26, 1994. Defendant Michael Gray has filed a one sentence objection to the Report and Recommendation.

Notwithstanding that defendant has failed to identify "those portions of the report or specified proposed findings or recommendations to which objection is made", 28 U.S.C. § 636(b)(1)(C), the court has considered the entire matter *de novo* and concludes that the Report and Recommendation is correct in every material respect and adopts it as the court's own opinion.

Accordingly, defendant's Motion to Suppress is DENIED. However, for the reasons outlined in the Report and Recommendation, all counts against defendant, except Count II, are dismissed.

## REPORT & RECOMMENDATION

BOYCE, United States Magistrate Judge.

The defendant, Michael Gray, was indicted on nine counts of burglary within Indian Country (File Entry 1). Most of the counts charged conduct occurring in Roosevelt City, Utah. However, following the United States Supreme Court's decision in *Hagen v. Utah*, — U.S. ——, 114 S.Ct. 958, 127 L.Ed.2d 252 (1994) the counts occurring in Roosevelt City were determined not to involve conduct within Indian Country and must be dismissed sua sponte. However, Count II charges a burglary in Ft. Duchesne, Utah. Ft. Duchesne is within Indian Country and that count remains outstanding under 18 U.S.C. § 1153(a) and (b) assimilating Utah Code Ann. § 76–6–202.

The defendant, Michael Gray, made a motion to suppress evidence allegedly based on an illegal search of his home. The portion of the motion for suppression has now been abandoned. The defendant Gray also made a motion to suppress statements taken from the defendant allegedly in violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); and the Fifth and Sixth Amendments (File Entry 28). A

memorandum in support of the motion was submitted (File Entry 30). Included in the memorandum is a claim that the government violated the *McNabb–Mallory* rule, 18 U.S.C. § 3501 (Point II). Hearing on the motion was continued by the parties. Hearings were held on February 23, 1994 (Tr. 2/13/94), March 31, 1994 (Tr. 3/31/94) and April 22, 1994 (Tr. 4/22/94).

The case was referred to the magistrate judge under 28 U.S.C. § 636(b)(1)(B). This report and recommendation is submitted pursuant to reference on the defendant Michael Gray's motion to suppress his statements.[1]

### Evidence

Officer Tracy Bird of the Roosevelt City Police Department responded to a call from supermarket employees in the city on April 28, 1993 at 2:45 a.m. He observed four persons standing in front of the store. The store was Stewart's Thriftway and some store employees were present (Tr. 2/23, pp. 5–6). Defendant Gray was being restrained by the other men present (Tr. 2/23 p. 6). The store employees said they had caught two individuals on the roof and they believed they were trying to break in. The store employees said the defendant, Michael Gray, said he and his companion were on the roof hunting rabbits and sightseeing. Defendant Gray and the other person with him were armed. He had a .22 caliber pistol (Tr. 2/23 p. 7). Gray said he had a gun and Officer Bird grabbed Gray, handcuffed him and patted him down. He retrieved a pistol and a clip (Tr. 2/23 pp. 7–8). Gray was yelling at another officer and lunged towards him and Gray was put on the ground. He was then placed in a vehicle and taken to the Roosevelt City Police Department. He was under arrest for attempted burglary (Tr. 2/23 p. 8). The firearm taken from defendant was not loaded. (Id.). The arrest was at 2:55 a.m.

Cecil Gurr, Roosevelt City Chief of Police, testified (Tr. 2/23 p. 12). He had been employed as a police officer for Roosevelt City since 1974 and Chief of Police since 1978. Gurr knew the defendant prior to April 28, 1993. Gurr's first contact with defendant on the 28th was when officers called him and said there had been people on top of Stewart's Thriftway with weapons. Gurr saw defendant at 4:00 a.m. at the Roosevelt Police station. The defendant was given a full *Miranda* warning. The defendant signed a waiver of rights (Gov. Exh. 1) (Tr. 2/23 pp. 14–15). Thereafter, Gurr questioned the defendant. According to Gurr, there were at least two separate interviews of defendant. One on the early morning of April 28, 1993 and one on the morning of the 29th of April 1993. The only thing said at the initial interview on the 28th of April was a statement by defendant about his being on top of the store rabbit hunting (Tr. 2/23 p. 16). At about 5:00 a.m. on the same day a search was made of Unit H–1 of the Stoneridge Apartments in Roosevelt. That search is not an issue in this motion. However, stolen evidence was gathered from the search (Tr. 2/23 p. 17) (Exhibit 2 is a consent search form).

After the search, a second interview of defendant occurred at 8:52 a.m. on the 28th. The defendant executed a written advice and waiver form before this interview (Pl. Exh. 3). Defendant Gray was willing to speak to Officer Gurr (Id.). Gray was confronted with the seized property and admitted he had burglarized the Ute Manufacturing Company in Ft. Duchesne, Utah on two occasions within the last two weeks (Tr. 2/23 p. 20). He gave a statement about how the burglaries were conducted (Tr. 2/23 p. 21).

On the 29th of April, 1993, Gurr again spoke to Gray and he was advised of his rights by Mr. Peter Maybee. Gray waived his rights and gave a statement about the Ute Manufacturing burglaries in Ft. Duchesne. He said that he had acted alone, and identified what he had taken. This was about 11:30 a.m. Gray was advised of his rights at 9:45. The interview ended at 11:45 (Tr. 2/23 pp. 21–22). Gray is an enrolled member of the Ute Tribe (Tr. 2/23 p. 22). At the time, Roosevelt City was considered to

---

1. Following the hearing on April 22, 1994 the parties agreed to continue the resolution of the matter pending decision of the Supreme Court in *United States v. Alvarez–Sanchez,* —— U.S. ——, 114 S.Ct. 1599, 128 L.Ed.2d 319 (1994).

be in Indian Country by federal officials but not by the State of Utah.[2] The FBI was contacted and advised of defendant's presence in the Roosevelt City Jail. The last interview of Gray was at the Ft. Duchesne Jail on April 29, (Uintah–Ouray Reservation) (Tr. 2/23 p. 23) by an FBI agent. Peter Maybee was a Bureau of Indian Affairs (BIA) officer (Tr. 2/23 p. 24).

The defendant did not make a statement about the Ute Manufacturing burglary when first interviewed by Chief Gurr at about 4:00 a.m. on April 28, 1993. Gray only spoke about rabbit hunting on the roof of the place where he was apprehended. The second interview was at 8:52 a.m. in the Roosevelt City Jail. After that interview defendant was transported to Ft. Duchesne around 9:30 to 10:00 a.m. (Tr. 2/23 p. 26). The second interview lasted 45 minutes. Gurr referred the case to tribal authorities. Some federal action was taken, but Gurr had no knowledge of what happened (Tr. 2/23 p. 27). Defendant was not transported by Gurr to a magistrate before the interviews on the 28th or 29th of April at Ft. Duchesne (Tr. 2/23 p. 28).

The interview on the 29th of April at Ft. Duchesne was conducted by BIA officers (Tr. 2/23 p. 28). According to Chief Gurr, defendant made a statement to Gurr on April 28, at 8:52 p.m. when defendant was confronted with stolen property found in defendant's girlfriend's apartment (Tr. 2/23 p. 29). Defendant may have been told that charges could be filed against defendant's girlfriend because of her having possession of stolen property (Id.). Nothing was said at that time about the children being in foster care, except a statement may have been made that if defendant's girlfriend was arrested the children would have to be cared for (Tr. 2/23 p. 30). No statement was made that defendant's girlfriend would be arrested if the defendant did not confess (Id.). No promise or threat was made to defendant nor any indication made that something bad would happen if he didn't confess (Tr. 2/23 p. 31).

Defendant did not invoke his preinterrogation rights.

Chief Gurr on recross examination, after his recollection had been refreshed, admitted that following Gray's arrest on the 28th he was transported to Ft. Duchesne at approximately 5:00 a.m. and then he was returned to Roosevelt at 8:52 a.m. (Tr. 2/23 p. 36) at which time the second interrogation of defendant Gray took place.

FBI Special Agent McPheters testified that he was assigned to the Vernal, Ft. Duchesne, Roosevelt area of Eastern Utah (Tr. 2/23 p. 37). On April 29, 1993 he spoke to the defendant at about 2:00 p.m. The interview took place at the Law Enforcement Services office at Ft. Duchesne (Tr. 2/23 p. 38). McPheters only knew that Gray had been arrested the day before by state officers. At 2:08 p.m. McPheters advised the defendant of his rights from an FBI form. Defendant signed a waiver of rights form (Tr. 2/23 p. 39, Pl. Exh. 4). The defendant was not under the influence of anything, no promises or threats were made to the defendant (Tr. 2/23 p. 40). Defendant indicated a willingness to talk (Id.). He made a written statement admitting burglaries of the Ute Manufacturing Company (Tr. 2/23 pp. 41–42). The interview lasted about 45 minutes. Ute Manufacturing is in Ft. Duchesne on the Uintah–Ouray (Ute) Reservation. No statement was made by McPheters or Agent Johnson, who was also present, about the defendant's girlfriend (Tr. 2/23 p. 45).

Defendant Michael Gray testified (Tr. 2/23 p. 41). He said that on April 28, 1993 when the police came he told them that Gray and his companion had been rabbit hunting and had gone up on the building to look around. A statement was taken from defendant by Chief Gurr at about 4:00 a.m. at the Roosevelt Police Department (Tr. 2/23 pp. 47–48). Defendant was transported to Ft. Duchesne. BIA Officer Peter Maybee came into his cell and stated that Sherry (defen-

2. This was not settled until the United States Supreme Court's subsequent decision in *Hagen v. Utah,* ⸺ U.S. ⸺, 114 S.Ct. 958, 127 L.Ed.2d 252 (1994). The Utah State courts had ruled Roosevelt City to be outside Indian Country. *State v. Perank,* 858 P.2d 927 (1992). The Court of Appeals for the Tenth Circuit had held to the opposite *Ute Indian Tribe v. State of Utah,* 773 F.2d 1087 (1985) (en banc). In *Hagen* the Supreme Court held Roosevelt City was not within the Uintah–Ouray reservation and not in Indian Country.

dant's girlfriend) was in custody and his children were in custody and if defendant went with him and told the officers what they wanted to hear they would get them out of jail. Defendant agreed and he was taken to Roosevelt and interrogated by Chief Gurr. He was transported to Roosevelt by Peter Maybee (Id.). Defendant made the statement to Chief Gurr to get his family out of incarceration (Id.). He would not have made a statement if he had not been told his family was in custody (Tr. 2/23 p. 50). This was about 8:30 a.m. After defendant made the statement to Chief Gurr he was taken back to Ft. Duchesne. On May 3, 1993 the defendant appeared in Tribal Court on some kind of charge (Tr. 2/23 pp. 51–52). Defendant fully understands English and is an intelligent, normal functioning adult.

On March 31, 1994 further hearing was held on the motion to suppress. The defendant called Pamela Chapoose as an additional witness. She resides in Ft. Duchesne, Utah and was in jail in Ft. Duchesne on April 28, 1993 (Tr. 3/13 p. 5). Michael Gray was also in jail. Chapoose was in "detox" and Gray was there in the next cell. Chapoose knew Gray. She did not know Peter Maybee but had seen him. She saw Maybee on the 28th. Chapoose said she overheard a conversation wherein Maybee was talking to Gray about his kids and said they would be taken care of if he would sign a paper. Gray was told he would get help and more or less be released (Tr. 3/31 p. 7). If Gray did not sign he wouldn't be released and wouldn't be able to see his kids. Officer Pike and a police lieutenant were present. If Gray didn't sign the paper his kids would be taken away. Chapoose was in jail for intoxication, a tribal offense. She had been in jail for a day and a half (Tr. 3/31 p. 8). She really didn't know the date of the conversation, she had been in jail at prior times, several times (Tr. 3/31 p. 9). She didn't know the month, she had been in jail every month for the past two or three years (Id.). She would get out of jail one day and be put back the next. She could not say when the conversation occurred. She was in an adjoining cell to Gray. The conversation took place about 9:30 or 10:00 (a.m.) (Tr. 3/31 p. 10). Officer Maybee had walked past in the hallway towards Gray's cell. Officers

were in the hallway. She didn't know if an FBI agent was present. She did not know Chief Gurr. Chapoose did not know how long Gray had been there; he got there before Chapoose. She did not see a paper, just that she heard someone say something about a paper (Tr. 3/31 p. 12). She had never heard Maybee speak before. Chapoose could not see Maybee while he was talking to Gray. She could not say it was Maybee who spoke about the defendant's children (Tr. 3/31 p. 15). Chapoose is not a credible witness.

Peter John Maybee testified. He is a criminal investigator for the Bureau of Indian Affairs (BIA) in Phoenix, Arizona (Tr. 3/31 p. 16). In April, 1993 he was the Chief investigator for BIA at the Uintah–Ouray Reservation in Utah. On April 28, 1993 he received a call from Chief Gurr of the Roosevelt City police. This was between 3:00 and 4:30 a.m. (Tr. 3./31 p. 17). Gurr said two male tribal members had been arrested on burglary charges. Maybee drove to Roosevelt City. He spoke briefly to Gurr and then went into another room with Gray (Tr. 3/31 p. 18). Gray only spoke about the incident with the Thriftway Store. The next day, the 29th of April, Maybee saw Gray at Ft. Duchesne with Chief Gurr (Id.). At that time, Maybee advised defendant of his preinterrogation rights from a BIA rights form (Id.) (Pl. Exh. 6). The defendant waived his rights and admitted the Ute Manufacturing burglary (Tr. 3/31 p. 20). After that, Maybee called FBI Agent McPheters. This was about 11:45 a.m. on the 29th (Tr. 3/31 p. 21). No threat was made on April 28, 1993 or anything said about keeping the defendant in custody and taking away his children unless a confession was signed (Id.). Maybee was not a party to any such conversation on April 29, 1993 as was stated by Ms. Chapoose (Id. and p. 25). Chief Gurr also made no threat to defendant on the 28th day of April. The defendant's children were never taken away (Tr. 3/31 p. 22).

Maybee never spoke with Gray other than once on the 28th of April 1993. He went back to Ft. Duchesne after the interview. Maybee did not have any recollection of driving back, at about 8:30 a.m. (Tr. 3/31 p. 21),

but it could have happened. The burglary could have been charged as a tribal offense (Tr. 3/31 p. 27).

Maybee was a BIA officer employed directly by the BIA. He enforced the BIA law and order code on the Uintah–Ouray reservation.[3] The Ute tribe had its own offense code, there were two codes applicable on the reservation (Tr. 3/31/ p. 27).

A third hearing was held on April 22, 1994 and Chief Cecil Gurr was called as a witness at the request of the court (Tr. 4/22). Chief Gurr testified that on April 28, 1993 he had contact with defendant Gray at about 3:59 a.m. Gurr contacted Peter Maybee, the head BIA investigator (for the Ute Tribe) (Tr. 4/22 p. 6). Jurisdiction over the particular area in Utah, whether state or federal (Indian Country), was in doubt and so the tribal police and Roosevelt City Police worked together on cases. Chief Gurr is deputized in Uintah County and Duchesne County, Utah and is cross-deputized as a Bureau of Indian Affairs officer (Tr. 4/22 p. 7). He routinely handles persons who will be tried in the Ute tribal court or in federal district court (Id.). After a search of defendant's apartment, at about 8:30 to 8:45 a.m. on April 28, 1994 Gurr went back to Roosevelt City. Defendant was transported to the tribal jail at Ft. Duchesne because it was a better holding facility. Roosevelt City does not have a jail or holding facility (Tr. pp. 8–9). Gray was then interviewed at about 8:52 a.m. He signed a waiver of rights and admitted his involvement in the Ute Manufacturing burglaries. Gray was then transported back to Ft. Duchesne around 10:00 a.m. (Tr. 4/22 p. 11).

On the morning of April 29, 1993, Gurr went over to Ft. Duchesne and met with Peter Maybee. Maybee and Gurr went to Ft. Duchesne, advised defendant of his rights and Maybee conducted an interview of the defendant (Id.). The interview took place in Maybee's office, about six to eight blocks from the jail (Tr. 4/22 pp. 11–12). When Gurr interrogated Gray in Roosevelt at 8:52 a.m. on April 28, 1993, he was acting as a BIA officer. The decision from the Utah (sic) (United States) Supreme Court[4] on jurisdiction in the area had not been decided or at least accepted.[5] Thus, there was confusion as to jurisdiction of offenses in Roosevelt City, state, federal, or Indian tribe, at that time. Gurr was the investigating officer (Tr. 4/22 p. 13). Maybee might also have been present at the 8:52 a.m. interview on the 28th of April 1993. Gurr was the complaining officer in matters involving defendant before the Ute Tribal Court.

Based on the above evidence the court enters the following findings of fact:

1. On April 28, 1993 defendant Michael Gray and a companion were apprehended in Roosevelt City, Utah on the roof of a supermarket. They were suspected of attempting a burglary. Local police were called. At around 4:00 a.m. Roosevelt City Police Chief Cecil Gurr spoke to the defendant and obtained a statement not relevant to this case. Chief Gurr was also a deputized officer for the Bureau of Indian Affairs (BIA). The defendant Michael Gray is an enrolled member of the Ute Tribe. There was, at the time, a dispute between the State of Utah, Ute Tribe, and the federal government as to the proper boundaries of Uintah–Ouray Reservation. The Tenth Circuit Court of Appeals had held Roosevelt City was within the exterior boundaries of the reservation. The Utah Supreme Court had held it was outside the reservation.

---

**3.** See 25 Code of Federal Regulations Chap. 1, Sub Chapter B § 11:38–11:98ME (April 1, 1993). The BIA Law and Order Code does not cover burglary. The Ute Tribal Code would be the primary code of substantive criminal law enforcement for minor offenses on the Uintah–Ouray Reservation. See The Law and Order Code of the Ute Indian Tribe of the Uintah and Ouray Reservation, Utah § 13–4–26 (Burglary). Maybee's status as a BIA officer is under 25 CFR § 301–304. See 25 U.S.C. § 13. See discussion *Ryder v. State*, 98 N.M. 316, 648 P.2d 774 (1982). See 25 CFR § 11.1.

**4.** *State v. Perank*, 858 P.2d 927 (1992) aff'd in substance *Hagen v. Utah*, —— U.S. ——, 114 S.Ct. 958, 127 L.Ed.2d 252 (1994) overruling *Ute Indian Tribe v. State of Utah*, 773 F.2d 1087 (10th Cir.1985).

**5.** The Utah Supreme Court's decision in *Perank* had been decided but the holding was in conflict with the Tenth Circuit decision in the *Ute Indian Tribe* case.

2. At the first time that defendant was questioned by Chief Gurr, at a little after 4:00 a.m. on April 28, 1993, plaintiff was given a proper warning of his preinterrogation rights and consented to speak. He signed a written waiver form. Nothing pertinent to this case was stated. The defendant was then transported to Ute Tribal jail at Ft. Duchesne, Utah. Roosevelt City does not have a holding facility. At the jail, the defendant may have said something to Peter John Maybee a BIA officer and investigator at the Uintah–Ouray reservation. However, no threats or promises of any kind were made to the defendant by Agent Maybee. Nothing was said as to charging or arresting his girlfriend or taking his children away from their residence. During this time a search was made of defendant's girlfriend's residence and stolen property was found, including items taken from the Ft. Duchesne burglaries of the Ute Manufacturing Company (Count II).

3. The defendant was brought from Ft. Duchesne to Roosevelt City and questioned by Chief Gurr at 8:52 a.m. Defendant was given a full preinterrogation warning and indicated he would speak without an attorney being present and defendant signed another written acknowledgement of rights and a waiver. When confronted with the evidence of the stolen property taken in the Ute Manufacturing Company burglaries defendant made a complete statement about the burglaries. No threats, coercion or promises were employed by Chief Gurr during the interrogation. Chief Gurr did mention the possibility of defendant's girlfriend being arrested because the stolen property was found in her apartment. Defendant was told that on such an event, his children would have to be cared for. No arrest of defendant's girlfriend occurred. These statements of Chief Gurr about the possible arrest of defendant's girlfriend did not cause defendant to make a statement. He made the statement because of the recovery of property stolen from burglaries. Following the statement, at about 10:00 a.m., defendant was returned to Ft. Duchesne.

4. The following day on April 29, 1993 at about 10:00 a.m. defendant was again interrogated. Defendant had never been taken to a magistrate although there is a federal magistrate judge in Vernal, Utah less than fifty miles away.[6] At about 11:00 a.m. BIA investigator Peter John Maybee interrogated the defendant in the BIA Law Enforcement office at Ft. Duchesne, Utah. Chief Gurr was present. A BIA rights form was used to advise defendant of his preinterrogation rights. The defendant speaks and fully understands English. The defendant waived his rights and admitted the Ute Manufacturing burglaries. No promises, threats, coercion, or force was used to induce defendant to make his statement. Nothing was said about taking away defendant's children unless he signed a confession. Defendant's statement was voluntary. He is an intelligent and normal person.

5. Following defendant's interrogation by Agent Maybee, he called FBI Special Agent Samuel McPheters. McPheters questioned defendant in Ft. Duchesne at the Law Enforcement Services Office around 2:08 p.m. Defendant was advised of his preinterrogation rights and signed an FBI waiver of rights form. No promises or threats were made to defendant and he was not under the influence of any drug or alcohol. Defendant indicated a willingness to talk and admitted burglaries of the Ute Manufacturing Company in Ft. Duchesne. The defendant Gray was then charged on May 3, 1993 in the Ute Tribal Court with some offense. He was eventually indicted in this court for the burglary of Ute Manufacturing Company.

### Discussion

■ In the defendant's motion to suppress (File Entry 28), the defendant alleged a "violation [of his] constitutional rights under Miranda v. Arizona,[7] and the Fifth and

---

6. This fact is noticed under Rule 201, F.R.E.

7. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) requires a warning to be given to a suspect before custodial interrogation. However, Miranda is not a constitutional right. Michigan v. Tucker, 417 U.S. 433, 94 S.Ct. 2357, 41 L.Ed.2d 182 (1974); New York v. Quarles, 467 U.S. 649, 104 S.Ct. 2626, 81 L.Ed.2d 550 (1984).

Sixth Amendments to the United States Constitution." There is no evidence that before or during the interrogation of the accused that there was pending any formal charges against him. Consequently, there is no Sixth Amendment issue. *Massiah v. United States,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964); *Maine v. Moulton,* 474 U.S. 159, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985); *Michigan v. Jackson,* 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986); *United States v. Gouveia,* 467 U.S. 180, 104 S.Ct. 2292, 81 L.Ed.2d 146 (1984); *McNeil v. Wisconsin,* 501 U.S. 171, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991).

■ In addition, the evidence shows that before each interrogation session, pertinent to this case, the defendant was given a complete *Miranda* warning and he executed a written waiver form or expressed a waiver of the *Miranda* rights. There was no police trickery or overreaching to obtain a waiver of defendant's preinterrogation rights. *Colorado v. Connelly,* 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986); *North Carolina v. Butler,* 441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979). There has been no *Miranda* violation in this case.

*Voluntariness*

■ The defendant's claim as to the inadmissibility of his confession is based on a due process claim that the statements were involuntary. 18 U.S.C. § 3501(b) sets forth factors that Congress has determined should be considered in determining if a confession is voluntary. The first factor is the length of time between arrest and defendant's statement. The arrest, in this case, was lawful and the custody of defendant is not tainted. The first relevant statement given by defendant to Chief Gurr was made shortly after 8:52 a.m. on April 28. Defendant had been in the custody of Chief Gurr for about five hours. The time from arrest to statement was not lengthy. The second interrogation was at about 10:30 a.m. on April 29, 1993. The interrogation was by a BIA investigator. The third interrogation was at about 2:00 p.m. the same day by an FBI agent. The second interrogation took place after defendant had been in custody for over twenty and

a half hours without being taken before a magistrate. The third interrogation occurred after defendant had been in custody for over twenty-two hours. The last two interrogations are outside the period set under 18 U.S.C. § 3501(c) for interrogation before presenting a defendant to a magistrate. However, the evidence does not support a conclusion that the time alone overcame the will of defendant. The time was inappropriately lengthy, but it did not overcome the will of the defendant *Haynes v. Washington,* 373 U.S. 503, 513–14, 83 S.Ct. 1336, 1342–44, 10 L.Ed.2d 513 (1963). Further, given the jurisdictional problems, in the area at the time, the delay was understandable.

Second, the evidence shows defendant was well aware of the nature of the offenses of which he was suspected. Third and fourth, defendant was fully advised of his right to remain silent as well as to counsel. Defendant freely waived both. Defendant was without counsel at the time of interrogation, but defendant had been advised of his right to counsel and expressly waived counsel's presence. Applying the factors of 18 U.S.C. § 3501(b), the defendant's statement was voluntary. *United States v. Brown,* 540 F.2d 1048 (10th Cir.1976); *United States v. Short,* 947 F.2d 1445 (10th Cir.1991).

■ The court has found there were no promises or threats made to the defendant by any of the interrogating officers. At the most, Chief Gurr mentioned the possibility of the defendant's girlfriend's arrest on a charge of receiving stolen property, which, given the fact that the stolen property taken by defendant was found in his girlfriend's apartment, was a realistic possibility. See Utah Ann. § 76–6–401, 408. Further, Gurr did not threaten prosecution or indicate defendant's children would be taken away. Contrast *United States v. Rivera Ruiz,* 797 F.Supp. 78 (D.P.R.1992) (unrebutted threats that wife and children were in danger rendered confession involuntary). There were no psychological or deceitful tactics like those condemned in *Spano v. New York,* 360 U.S. 315, 79 S.Ct. 1202, 3 L.Ed.2d 1265 (1959). The circumstances show much less pressure by the officer than was imposed on the defendant in *United States v. Slater,* 971 F.2d

626 (10th Cir.1992) where the court found the defendant's confession was voluntary.

 The test of voluntariness is whether law enforcement officials have overborne the will of the accused. *Haynes v. Washington,* 373 U.S. 503, 673–74, 83 S.Ct. 1336, 1436–37, 10 L.Ed.2d 513 (1963); *Townsend v. Sain,* 372 U.S. 293, 307, 83 S.Ct. 745, 754, 9 L.Ed.2d 770 (1963). Whether a confession or other statement of an accused is voluntary must be determined from the totality of the circumstances. *Arizona v. Fulminante,* 499 U.S. 279, 284–87, 111 S.Ct. 1246, 1251–52, 113 L.Ed.2d 302 (1991); *United States v. Perdue,* 8 F.3d 1455 (10th Cir.1993); *United States v. Muniz,* 1 F.3d 1018 (10th Cir.1993); *United States v. Matthews,* 942 F.2d 779–782 (10th Cir.1991); *United States v. Fountain,* 776 F.2d 878 (10th Cir.1985); *United States v. Falcon,* 766 F.2d 1469, 1476–77 (10th Cir. 1985).

 In *Colorado v. Connelly,* 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986) the court said "Absent police conduct causally related to the confession, there is simply no basis for concluding that any state actor has deprived a criminal defendant of due process of law." 479 U.S. at 164, 107 S.Ct. at 520. Unless there is police misconduct, there is no basis for a claim of an involuntary confession.

We hold that coercive police activity is a necessary predicate to the finding that a confession is not "voluntary" within the meaning of the Due Process Clause of the Fourteenth Amendment.

479 U.S. at 167, 107 S.Ct. at 522.

There must be some indication of police overreaching under *Connelly.* See *United States v. Guerro,* 983 F.2d 1001 (10th Cir. 1993).[8] In this case an examination of the officers' conduct against the applicable legal standards supports the conclusion there was no improper coercion and that defendant's confessions were voluntary.

*18 U.S.C. § 3501(c)*

 The defendant's memorandum in support of the motion to suppress (File Entry 30) asserts the government violated the "McNabb–Malloy (sic) Rule." The defendant refers to *McNabb v. United States,* 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 (1943) and *Mallory v. United States,* 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957). However, these were non-constitutionally based decisions and have been supplanted by Congress in 18 U.S.C. § 3501(c). See discussion *United States v. Alvarez–Sanchez,* —— U.S. ——, 114 S.Ct. 1599, 128 L.Ed.2d 319 (1994). In *Alvarez–Sanchez,* the Supreme Court did not construe § 3501(c) as to the applicable standard for the case, but held the statute only applied when the defendant came into federal custody. Chief Gurr testified he was a cross-deputized BIA officer. He took custody of the defendant around 4:00 a.m. on April 28, 1994. BIA investigator Maybee and FBI S/A McPheters were federal officers.[9] Tribal police are not federal officers unless there is a working arrangement with federal officers. *United States v. Leeds,* 505 F.2d 161, 163 (10th Cir.1974). See also *United States v. Davis,* 456 F.2d 1192 (10th Cir.1972); *United States v. Torres,* 663 F.2d 1019 (10th Cir. 1981). An arrest by a BIA officer is federal custody. *United States v. Jackson,* 712 F.2d 1283 (8th Cir.1983); *United States v. De-Marce,* 513 F.2d 755, 757 (8th Cir.1975); See also *Romero v. Peterson,* 930 F.2d 1502 (10th Cir.1991) (BIA officers are federal officers for civil rights suit).

 In this case Chief Gurr, as a cross deputized BIA officer was, by his testimony, acting as a federal officer. See *Anderson v. United States,* 318 U.S. 350, 356, 63 S.Ct. 599, 602, 87 L.Ed. 829 (1943); *United States v. Alvarez–Sanchez,* supra. Chief Gurr testified that he *was* acting as a BIA officer because of the jurisdictional confusion that existed until the Supreme Court's decision in

---

**8.** Some decisions in the Tenth Circuit have not referred to the *Connelly* standard and have gone directly to the totality of the circumstances applicable to the situation, apparently assuming some police coercion was present. *United States v. Perdue,* supra; *United States v. Short,* 947 F.2d 1445 (10th Cir.1991).

**9.** BIA officers are federal officers under 18 U.S.C. § 111; *United States v. Bettelyoun,* 16 F.3d 850 (8th Cir.1994). See Indian Law Enforcement Reform Act § 5(a, f), 25 U.S.C. § 2804(a, f). See also *Stone v. United States,* 506 F.2d 561 (8th Cir.1974).

*Hagen.* However, the defendant's first statement to Chief Gurr about the Ute manufacturing Company burglaries was made within six hours of defendant coming into Chief Gurr's custody. There is no § 3501(c) issue as to this statement.

The defendant has cited no Tenth Circuit case in his brief as to whether 18 U.S.C. § 3501(c) would require suppression of the defendant's statements in this case.[10] Defendant has cited the Ninth Circuit's opinion in *Alvarez–Sanchez,* supra, that was reversed, in part, by the United States Supreme Court, cited supra. The court left open the issue of whether 18 U.S.C. § 3501(c) requires suppression of an otherwise voluntary confession taken more than six hours after defendant was taken into custody by federal officers where defendant is not taken before a magistrate until more than six hours had passed. The Supreme Court in *Alvarez–Sanchez,* supra, noted there was a split of opinion among the federal Courts of Appeal on the interpretation of § 3501(c) but left the matter for resolution until another case. Justices Ginsburg and Blackmun concurring, —— U.S. at ——, 114 S.Ct. at 1605 stated:

> 18 U.S.C. § 3501(a) provides a "confession . . . shall be admissible in evidence if it is voluntarily given." § 3501(b) sets forth various factors to be considered in determining voluntariness. It has been determined that in this case, defendant's statements were voluntary. However, 18 U.S.C. § 3501(c) also provides that a confession "shall not be inadmissible solely because of delay in bringing [a] person before a magistrate . . . if such confession is found by the trail judge to have been made voluntarily . . . *Provided,* that the time limitation contained in this subsection shall not apply in any case in which the delay in bringing such person before such magistrate or other officer beyond such six-hour period is found by the trial judge to be reasonable considering the means of transportation and the distance to be traveled to the nearest available such magistrate or other officer."

Some courts have construed § 3501(c) to allow for a safe harbor of six hours for interrogation, but if the suspect is not taken before a magistrate until after six hours the confession must be excluded unless the time beyond the six hours is necessary because of the means and transportation to the nearest magistrate. Others have construed § 3501(c) to mean a confession if taken after six hours is admissible if voluntary and the period after six hours is only a factor to be considered in determining the issue of voluntariness because § 3501(b) provides the trial judge is to take into consideration "All the circumstances surrounding the giving of the confession" and this is also stated in § 3501(a & c). See *Alvarez–Sanchez,* supra, at ——, 114 S.Ct. at 1605 fn to concurring opinion of Justices Ginsburg and Blackmun.

As noted, the defendant has cited only Ninth Circuit cases, whereas the controlling law in this district is that of the Tenth Circuit.[11] *United States v. Spedalieri,* 910 F.2d 707, 709 (10th Cir.1990). Those courts that have considered the matter have applied 18 U.S.C. § 3501(c) to situations where the defendant is in the custody of a BIA officer. *United States v. Edwards,* 539 F.2d 689 (9th Cir.1976) (rape on Indian reservation, confession admissible where delay is attributable to shortage of personnel and vehicles and distance involved); *United States v. Bear Killer,* 534 F.2d 1253 (8th Cir.1976) (delay measured from time Indian defendant was apprehended by BIA officer).

The Tenth Circuit has rejected the rule of the Ninth Circuit that a statement taken beyond the six hours in § 3501(c) is inadmissible if otherwise voluntary. *United States v. McCormick,* 468 F.2d 68, 74–75 (10th Cir. 1972) (delay only one factor); *United States v. Crocker,* 510 F.2d 1129 (10th Cir.1975) (delay more than six hours is a factor in determining voluntariness); *United States v. Shoemaker,* 542 F.2d 561, 563 (10th Cir.1976) (voluntariness is sole factor under § 3501); *United States v. Short,* 947 F.2d 1445, 1450–51 (10th Cir.1991):

**10.** Only the defendant's statements to Officer Maybee and Agent McPheters are outside the six hour period of § 3501(c).

**11.** Justices Ginsburg and Blackman did not cite to the Tenth Circuit opinions in noting a split of authority among the federal circuits.

The federal statute governing admissibility of confessions provides that a confession is not generally inadmissible solely because of delay in bringing a person before a magistrate if the confession was voluntarily made within six hours immediately following arrest or detention. Defendant does not contend he confessed more than six hours after his arrest or detention. Defendant's confession thus falls within the time frame set by the law. Furthermore, we have already held Defendant's confession was voluntary and have therefore addressed the "sole constitutional requisite governing the admission of a confession in evidence." *United States v. McCormick,* 468 F.2d 68, 75 (10th Cir.1972), cert. denied, 410 U.S. 927, 93 S.Ct. 1361, 35 L.Ed.2d 588 (1973). We note the six-hour time limit is merely a factor in determining voluntariness, and confessions taken more than six hours after arrest can be admitted. *Id.* at 74; 18 U.S.C. § 3501(a)–(e). See also *United States v. Shoemaker,* 542 F.2d 561, 563 (10th Cir.) (voluntariness is the sole test for admitting a confession and delays caused by a defendant do not render the confession inadmissible), cert. denied, 429 U.S. 1004, 97 S.Ct. 537, 50 L.Ed.2d 616 (1976).

■ This construction appears to coincide with § 3501 taken as a whole *King v. St. Vincent's Hosp.,* 502 U.S. 215, 112 S.Ct. 570, 116 L.Ed.2d 578 (1991) (statute is to be read as a whole, because statutory language, plain or not, depends on the context); *General Motors Acceptance Corp. v. Rupp,* 951 F.2d 283 (10th Cir.1991) (description of the statute as whole is to be considered); *Negonsott v. Samuels,* 933 F.2d 818 (10th Cir.1991) (interpretation should be made that gives full effect to all provisions for statute); *Aulston v. United States,* 915 F.2d 584 (10th Cir.1990) (court looks to provisions of whole law, and to its object and policy). In 18 U.S.C. § 3501(a), the statute expressly states that voluntariness controls admissibility. This statement is also found in § 3501(c) the section containing the six hour proviso. Also, § 3501(b) expressly states voluntariness is to be determined from all the surrounding circumstances and expressly includes in subsection (1) the "time elapsing between arrest

and arraignment of the defendant …" This strongly supports the conclusion that a delay less than six hours is not a significant factor on voluntariness, but a period of over six hours may be considered but will be deemed reasonable if transportation and distance justify it.

In Kamisar, *Police Interrogation and Confessions, Essays in Law and Policy* p. 9 (1980) it is noted McNabb/Mallory arose out of concern for the coerced confession. If the confession is voluntary the concern is negated. This conclusion is supported by the Legislative history of § 3501. Senate Report 1097 (To Accompany S. 917, PL. 90–351) expressly states, "This section also assures that confessions made while the suspect is under arrest shall not be inadmissible solely because of delay in bringing the defendant before a magistrate or commissioner, and provides that nothing therein will bar from evidence a voluntary, spontaneous and unsolicited confession." *U.S.Code Congressional and Administrative News,* 90th Congress, Second Session 1968 p. 2112, 2123. "Enactment of subsections 3501 and 3502 … is needed to offset the harmful effects of the *Mallory* case …" Id. p. 2124. "Enactment of the provisions of subsections 3501 and 3502 would assign proper weight to the *Mallory* rule. Delay in bringing a suspect before a committing magistrate would be a factor to consider in determining the issue of voluntariness, but it would not be the sole criterion to be considered—operating to automatically exclude an otherwise competent confession." Id. p. 2127. Since the *McNabb/Mallory* rule is not of Constitutional status, the direction of Congress prevails. If the confession is voluntary it is admissible. This court must follow the position of the Court of Appeals of the Tenth Circuit. However, it is worth noting that the Tenth Circuit construction makes good policy, as well as being harmonious with Congressional intent in § 3501. Evidence which is otherwise credible and will bear on the truth is not arbitrarily excluded based on a fixed time line. Truth prevails over a secondary consideration. In this case, where jurisdiction was in doubt, where cooperation between state and federal officers is critical in a remote area of the country, and

where whether to proceed by state, federal or tribal prosecution [12] is as under consideration and possibly of doubt. The delay was somewhat understandable in spite of the availability of a federal magistrate judge within fifty miles. See *United States v. Christopher*, 956 F.2d 536 (6th Cir.1991) (delay based on choice of civil v. Military jurisdiction makes the delay reasonable). The sanction of exclusion in this case would serve no useful purpose. It would not operate to deter officers and the jurisdictional issue in Utah has now been clarified. The better policy is to serve the ends of truth [13] and admit the defendant's statements.

### Conclusion

The defendant's motion to suppress should be denied. However, all counts against defendant, except Count II should be dismissed.

---

**12.** The Tenth Circuit branch law library in Salt Lake City nor the United States Attorney's office has a copy of the Uintah–Ouray Law and Order Code.

**13.** See discussion of Jeremy Bentham's *Rationale of Judicial Evidence (in) Twining, Theories of* *Evidence: Bentham & Wigmore*, pp. 889–91 (1985). To Bentham rectitude of decision and truth were the highest values of the judicial process. Support for that position is also found in Jerome Frank, *Courts on Trial*, Chap. 6, (1970).